IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

JENNIFER M. LAWSON, )
)
        Plaintiff, ) TC-MD 150418N
)
    v. )
)
DEPARTMENT OF REVENUE, )
State of Oregon, )
)
        Defendant. ) **FINAL DECISION**[1]

Plaintiff appeals Defendant's Notice of Assessment dated June 16, 2015, for the 2012 tax

year. A trial was held in the courtroom of the Oregon Tax Court on April 11, 2016, in Salem,

Oregon. Barbara Good (Good), CPA, appeared on behalf of Plaintiff. Plaintiff testified on her

own behalf. Elisa Tibbs (Tibbs), Tax Auditor, appeared and testified on behalf of Defendant.

Plaintiff's Exhibits 1 through 5 and Defendant's Exhibits A through H were received without

objection.

## I. STATEMENT OF FACTS

Plaintiff testified that she was an outside sales consultant for Salon Services & Supplies,

Inc. (Salon Services) in 2012, and has worked for Salon Services since 2009. Plaintiff's manager

wrote that Plaintiff's "job responsibilities include but are not limited to; visiting 10-14 salons a

day, and providing education and support to her clients." (Ptf's Ex 1.) Plaintiff testified that, in

2012, she represented approximately 25 brands that she sold to salons and spas. Plaintiff

testified that her job required her to make in-person contacts with her customers and sales

/ / /

---

[1] This Final Decision incorporates without change the court's Decision, entered September 8, 2016. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

targets. She demonstrated products, educated customers on the use of products, and built relationships with customers by taking them to lunch or coffee or attending events together.

Plaintiff testified that her income was and is based only on commissions. (*See also* Def's Ex A at 1.) She testified that she grew her business more than any other sales representative within the company in 2012 and 2013. Plaintiff grew her sales over $200,000 in 2012. (Def's Ex E at 1.) As of November 2, 2015, Plaintiff had sold $915,000. (*Id.*) Plaintiff testified that, as of the date of trial, she was a "million dollar consultant" meaning she had generated $1 million in sales for her employer; she typically sold $80,000 to $90,000 per month. Plaintiff testified that she prepared a list of her monthly sales in 2012 based on her monthly reports. (Ptf's Ex 4.) In 2012, she sold $705,537 "in shampoo and hair color with the average sku being from $5.00 to $13.00." (Def's Ex E at 1.) Plaintiff testified she was unable to provide invoices for her sales; given the prices of individual items, there would have been too many invoices. (*See id.*)

Plaintiff testified that, in 2012, her employer was headquartered in Renton, Washington (near Seattle) and operated in five states. She testified that her employer did not have a Portland office. Plaintiff testified that her territory in 2012 included Salem, the Oregon coast, "wine country" (McMinnville), Sherwood, Hillsboro, Tualatin, and Banks. She provided a list of her customers with addresses that she described as representative of her customer list in 2012. (Ptf's Ex 5.) Plaintiff testified that once per week she picked up a "brand specialist" for one of her products at the Portland airport and they traveled together to visit Plaintiff's customers. She testified that, approximately once per month, she attended one-day or two-day sales meetings at her employer's headquarters.

Plaintiff's manager wrote that, as an outside sales representative, Plaintiff is "required to have a working vehicle, a home office, a phone and a computer. She is also required to attend

Sales Meetings in Oregon and/or Seattle every month and to transport educators to and from the Portland airport regularly." (Ptf's Ex 1.) Salon Services "follow[s] a 'non-accountable' expense reimbursement plan * * *." (Def's Ex B at 1.) "Monthly expense allowances are reflected on the employee's pay stub/paycheck and are reported as income on their year-end W-2." (*Id.* at 2.)

> "[Plaintiff] receives $150.00 per month for mileage – this is an allowance she receives to help cover gas expense based on the size of her territory coverage in the Portland area. Salon Services does not provide a car allowance to their sales consultants. To be a sales consultant for Salon Services the employee needs to provide their own transportation, insurance coverage, etc. They use their own vehicle to service their accounts."

(Def's Ex A at 1 (letter from the "Controller" at Salon Services & Supplies, Inc.).)

Plaintiff testified that her employer required her to live within her sales territory and to maintain both a vehicle and a home office. (*See* Ptf's Ex 1.) Plaintiff testified that, in 2012, she started her workday at her home office in Wilsonville, then drove to her customers' business locations or to the airport. She testified that she was working all day once she left her home office in the morning; she did not have any personal activities interspersed throughout her day.

Plaintiff testified that she had a sales route, but that she had to vary it somewhat each week when she had a brand specialist with her. (*See* Ptf's Ex 3; *see also* Def's Ex F.) For instance, she would not bring the brand specialist to visit a customer who did not purchase that brand. Plaintiff testified that she would plan her own route and provide it to her supervisor during monthly, two-hour strategy meetings. Plaintiff testified that her route would also vary somewhat month-to-month because she made cold calls on potential customers in order to grow her business. She testified that she typically had about 10 new "targets" (potential customers) per month. With the exception of one day reporting 100 miles, Plaintiff's sales route lists daily miles ranging from 49 to 67 miles. (Ptf's Ex 3.)

/ / /

A.    *Plaintiff's Mileage Log*

Plaintiff's mileage log lists the date, the general destination for business travel (*e.g.*, "Beaverton," "Tigard," or "Seattle"), the beginning odometer reading, and a check mark indicating whether the mileage was business or personal. (*See generally* Ptf's Ex 2.) Plaintiff testified that the number noted after each location in her mileage log is the number of stops she made that day. (*See id.*) Plaintiff specifically identified trips to the Portland airport, to Seattle, and to customers at the Oregon coast. (*See id.*) She noted the total mileage each month for those three types of trips: her 2012 annual total mileage included 4,840 miles for trips to Seattle; 6,011 miles for trips to the Portland airport; and 3,834 miles for trips to the coast. (*See id.*) According to Plaintiff's log, she typically did not work weekends with the exception of a company meeting once or twice per month. (*See id.*) Plaintiff reported a one-week vacation in August 2012 and eight additional days for holiday and vacation. (*See id.* at 8, 9, 12-13.) Plaintiff testified that, based on her mileage log, she drove a total of 40,400 miles in 2012. (*Id.* at 14.) She testified that, of that amount, 37,993 miles were for business and 2,407 were personal. (*Id.*)

According to Plaintiff's mileage log, her January 1, 2012, odometer reading was 72,333 for a Subaru and her August 15, 2012, odometer reading was 30,190 for a Mazda. (Ptf's Ex 2 at 1; 9.) Plaintiff testified that she typically bought a new car every two years because she put so many miles on her cars. She testified that she bought a new car in August 2012, which is why the odometer readings change in that month. (*See id.* at 9.)

Tibbs testified that she did not think Plaintiff's mileage log met the adequate records requirement of IRC section 274(d) because (1) it included only a starting odometer reading, not an ending odometer reading, and (2) it did not list every stop Plaintiff made. Tibbs testified that Plaintiff's bank records revealed inconsistencies in her mileage log: (1) on March 23, 2012,

Plaintiff's mileage log reported that she was in "Salem/Monmouth," but her bank statement revealed a coffee purchase in Beaverton at 2:02 p.m.; and (2) on August 28, 2012, Plaintiff's mileage log reported that she was in Hillsboro, but her bank statement revealed a coffee purchase in West Linn at 2:43 p.m. (Def's Ex D at 4, 9, Ex G at 1, 4.) Tibbs testified that Plaintiff's sales route is not sufficient evidence because it was not from 2012 and it varied.

Tibbs testified that Plaintiff's reported miles on her tax return totaled 44,000, which does not match Plaintiff's total of 40,400 reported in her log. (*See* Def's Ex C at 1.) She testified that she tallied up Plaintiff's total mileage based on her log and found the total to be 40,509, allocated as 22,243 miles for the first vehicle and 18,266 miles for the second vehicle. On her 2012 tax return, Plaintiff claimed a mileage deduction of $21,086 based on 37,993 business miles. (Def's Ex C at 1.) The return reported 6,007 "other" miles. (*Id.*) Good stated that she estimated the number of "other" miles when she prepared Plaintiff's return. On Plaintiff's return, the "No" box is checked in response to the question: "Do you (or your spouse) have another vehicle available for personal use during off-duty hours." (*Id.*) However, Plaintiff testified that she also had a second, older vehicle that she used for teaching her children to drive. She did not report any miles for that vehicle on her return.

B.    *Plaintiff's Home Office*

Plaintiff testified that, for the first part of 2012, she lived in a three-bedroom house that she rented in Charbonneau. She testified that the house had a formal dining room and a secondary dining room. Plaintiff testified that the secondary dining room was exclusively used for her business. She testified that, in her office, she had a computer, printer, files regarding her brands, and a shredding machine to shred credit card records and other sensitive documents. Plaintiff testified that she also stored products in her garage. Plaintiff testified that, for the

second part of 2012, she lived in a three-bedroom house on Garden Acres. She testified that, in that house, she used a small, closed-off den for her office. Plaintiff testified that she had an L-shaped desk in that office with a computer, printer, shredder, files, and miscellaneous office supplies. Plaintiff testified that she used each of her home offices every Friday to participate in a "mega meeting" videoconference with everyone from her company. Plaintiff testified that she did not claim a deduction for either home office in 2012.

Tibbs asked whether Plaintiff used her home offices for any personal use. In response, Plaintiff testified that she probably used her shredder on occasion for personal shredding and she probably used her desk on occasion to pay personal bills. She testified that she primarily paid bills online. Plaintiff testified that her family did not use her offices for anything. Tibbs testified that, although she agrees that Plaintiff's employer required Plaintiff to maintain a home office, she does not think the office was used exclusively for business.

## II. ANALYSIS

The issue presented is whether Plaintiff provided adequate substantiation for her claimed 2012 tax year deduction for unreimbursed employee mileage expenses.[2]

The Oregon Legislature intended to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the Internal Revenue Code relating to the measurement of taxable income of individuals, estates and trusts, modified as necessary by the state's jurisdiction to tax and the revenue needs of the state[.]" ORS 316.007(1).[3] "Any term used in this chapter has the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or the term is

---

[2] Plaintiff also claimed deductions for cell phone and meals, but did not present evidence on those deductions at trial. Good stated that those deductions were small, so Plaintiff decided not to pursue them.

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

specifically defined in this chapter." ORS 316.012. On the issues presented in this case, "Oregon law makes no adjustments to the rules under the Internal Revenue Code (IRC) and therefore, federal law governs the analysis." *See Porter v. Dept. of Rev.*, 20 OTR 30, 31 (2009).

Deductions are "a matter of legislative grace" and taxpayers bear the burden of proving their entitlement to the deductions claimed. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). "In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief[.]" ORS 305.427. Plaintiff must establish her claim by a preponderance of the evidence, which "means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet [her] burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). "In an appeal to the Oregon Tax Court from an assessment made under ORS 305.265, the tax court has jurisdiction to determine the correct amount of deficiency * * *." ORS 305.575.

A.      *Unreimbursed Employee Business Expenses, Generally*

IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. To be 'necessary[,]' an expense must be 'appropriate and helpful' to the taxpayer's business. * * * To be 'ordinary[,]' the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved." *Boyd v. Comm'r*, 83 TCM (CCH) 1253, WL 236685 at *2 (2002) (internal citations omitted). IRC section 262 generally disallows deductions for "personal, living, or family expenses" not otherwise expressly allowed under the IRC.

Taxpayers must be prepared to produce "any books, papers, records or memoranda bearing upon [any] matter required to be included in the return[.]" ORS 314.425(1); *see also Gapikia v. Comm'r*, 81 TCM (CCH) 1488, WL 332038 at *2 (2001) ("Taxpayers are required to maintain records sufficient to substantiate their claimed deductions"). Generally, if a claimed business expense is deductible, but the taxpayer is unable to substantiate it fully, the court is permitted to make an approximation of an allowable amount. *Cohan v. Comm'r*, 39 F2d 540, 543-44 (2nd Cir 1930). IRC section 274(d) supersedes the *Cohan* rule and imposes more stringent substantiation requirements for travel, meals, entertainment, gifts, and listed property under IRC section 280F(d)(4)(A)(i). Treas Reg § 1.274-5T(a).

B.      *Home Office Exception to Nondeductible Commuting Expenses*

Plaintiff's mileage log reported daily mileage beginning from her home. Thus, Plaintiff deducted daily transportation expenses associated with driving between her home and various business locations, including her employer's headquarters, the airport, and her customers' business locations. Generally, the expense associated with traveling between one's home and work location is considered a nondeductible commuting expense. Rev Rul 99-7, 1999-1 CB 361 describes several exceptions to that general rule, one of which is when a "taxpayer's residence is the taxpayer's principal place of business within the meaning of [IRC] § 280A(c)(1)(A) * * *."

The first question is whether Plaintiff's home was her principal place of business within the meaning of IRC section 280A(c)(1). The court considers that question even though she did not claim a deduction for her home office. *See Bogue v. Comm'r*, 102 TCM (CCH) 41, WL 2709818 at *7 (2011) ("although petitioner did not claim a deduction for the business use of his residence pursuant to section 280A(c)(1), we nonetheless must consider whether petitioner's office in his residence qualifies as his principal place of business under that statute").

IRC section 280A(a) generally prohibits any deduction "with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence." IRC section 280A(c)(1) provides several exceptions to that general rule for the taxpayer's business use of a dwelling unit. One such exception is for "a portion of the dwelling unit which is exclusively used on a regular basis * * * as the principal place of business for any trade or business of the taxpayer[.]" IRC § 280A(c)(1)(A).

> "For purposes of subparagraph (A), the term 'principal place of business' includes a place of business which is used by the taxpayer for the administrative or management activities of any trade or business of the taxpayer if there is no other fixed location of such trade or business where the taxpayer conducts substantial administrative or management activities of such trade or business."

IRC § 280A(c)(1). In the case of an employee, this exception applies only if the home office is maintained for the convenience of her employer. *Id.*

Plaintiff testified that she is required by her employer to maintain a home office and she provided letters from her employer stating the same.[4] Plaintiff's employer does not provide her with any other office space, so Plaintiff maintains her files and products at her home office. Once per week, she participates in a videoconference from her home office. Although Plaintiff performed her primary job duty--sales--at her customers' business locations, she performed her administrative activities at her home office. The court is persuaded that Plaintiff's home office was her principal place of business under IRC section 280A(c)(1).

Tibbs questioned whether Plaintiff's home office was "exclusively used" for her business given that Plaintiff admitted she probably used her shredder and desk on occasion for personal uses. IRC § 280A(c)(1)(A). The court finds that those personal uses by Plaintiff are *de minimis* and, as previously discussed by this court, will not prevent a finding that the office was used

---

[4] In this analysis, the court uses the term "home office" to refer to both of Plaintiff's home offices in 2012.

exclusively for business. *See Barott v. Dept. of Rev.*, TC-MD 120603N, WL 1830815 at *9-10 (Apr 30, 2013), citing *Rayden v. Comm'r*, 101 TCM (CCH) 1001 (2011).

Because Plaintiff's home office was her principal place of business under IRC section 280A(c)(1)(A), Plaintiff qualifies for the exception under Rev Rul 99-7, 1999-1 CB 361 and may deduct mileage starting from and ending at her home, to the extent it is substantiated.

C.      *Plaintiff's Substantiated Mileage*

Ordinary and necessary business travel expenses, including transportation, are deductible under IRC section 162(a), but are subject to the strict substantiation requirements of IRC section 274(d).  Taxpayers must substantiate such expenses "by adequate records or by sufficient evidence corroborating the taxpayer's own statement" the amount, time, place, and business purpose of the travel.  IRC § 274(d); Treas Reg § 1.274-5T(b)(2).

> "To meet the 'adequate records' requirements of [IRC] section 274(d), a taxpayer shall maintain an account book, diary, log, statement of expense, trip sheets, or similar record * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure or use * * *."

Treas Reg § 1.274-5T(c)(2)(i).  "A contemporaneous log is not required, but a record of the elements of an expenditure or of a business use of listed property made at or near the time of the expenditure or use, supported by sufficient documentary evidence, has a high degree of credibility * * *."  Treas Reg § 1.274-5T(c)(1).

Plaintiff maintained a mileage log in 2012 that substantiated the date and place of her business travel.  The business purpose of Plaintiff's travel is adequately supported in this case based on the nature of her work and her credible testimony.  *See* Treas Reg 1.274-5T(c)(2)(ii)(B) ("Where the business purpose is evident from the surrounding facts and circumstances, a written explanation of such business purpose will not be required.  For example, in the case of a salesman calling on customers on an established sales route, a written explanation of the business

purpose of such travel ordinarily will not be required."). The primary issue is whether Plaintiff has adequately substantiated the amount of her business travel in 2012; *i.e.*, her mileage.

Plaintiff's employment required her to drive to 10 to 14 different business locations each work day, not including trips to the airport or Seattle. Plaintiff was successful at her business, as demonstrated by her sales totals and her ranking within the company. The court has no doubt that Plaintiff incurred substantial business mileage on her personal vehicle.

Tibbs found Plaintiff's mileage log to be unreliable for two reasons: (1) it included only a starting odometer reading, not an ending odometer reading, and (2) it did not list every stop Plaintiff made during the day. The second reason is expressly addressed in the regulations:

> "Uses which may be considered part of a single use, for example, a round trip or uninterrupted business use, may be accounted for by a single record. For example, use of a truck to make deliveries at several different locations which begins and ends at the business premises and which may include a stop at the business premises in between two deliveries may be accounted for by a single record of miles driven. In addition, use of a passenger automobile by a salesman for a business trip away from home over a period of time may be accounted for by a single record of miles traveled. De minimis personal use (such as a stop for lunch on the way between two business stops) is not an interruption of business use."

Treas Reg § 1.274-5T(c)(6)(i)(C). Thus, Plaintiff was not required to record every stop she made while she was making sales calls. Additionally, even if Plaintiff made a stop for coffee or lunch (as it appears she did based on her bank statements) the stop was *de minimis* and did not interrupt Plaintiff's business use of her vehicle.

Tibbs' first reason is more problematic. Plaintiff failed to record her ending odometer reading each day. If Plaintiff completed her sales route for the day, then used her vehicle to run errands or for some other personal use in the evening, it is unclear how she accounted for that personal mileage. Plaintiff's only recorded personal mileage was on weekends, holidays, and

/ / /

vacations. Plaintiff's mileage log does not fully distinguish between business and personal miles.

In her mileage log, Plaintiff separately identified three categories of business travel she made routinely: to her employer's headquarters in Seattle (Renton); to the Portland airport to pick up brand representatives; and to call upon her customers at the Oregon coast. Those three categories of trips totaled 14,685 miles in 2012. The court finds that mileage is adequately substantiated by Plaintiff's log and credible testimony.

In addition to her mileage log, Plaintiff provided a sample sales route that was representative of her 2012 sales route. Based on her sales route, Plaintiff's daily business travel ranged from 49 to 67 miles, with the exception of one day requiring 100 miles of business travel. The court is persuaded that, on days that Plaintiff did not drive to Seattle or the Oregon coast, she drove at least 50 miles per day to make sales calls.[5] Plaintiff's mileage log reveals that she worked 259 days in 2012. (*See* Ptf's Ex 2.) Of those days, she drove to the Oregon coast on nine days and to Seattle on 11 days.[6] (*See id.*) Based on 239 days driving at least 50 miles per day, Plaintiff has substantiated additional business mileage of 11,950 miles. In total, Plaintiff has substantiated 26,635 business miles for the 2012 tax year.

### III. CONCLUSION

After careful consideration, the court finds that Plaintiff's home office was her principal place of business in the 2012 tax year, thus she is permitted to deduct transportation expenses beginning from her home office. The court further finds that Plaintiff is allowed a Schedule A deduction for unreimbursed employee expenses based on 26,635 business miles. Now, therefore,

---

[5] Plaintiff likely drove more than 50 miles per day on some days, but the court cannot allow more mileage absent additional evidence.

[6] Plaintiff testified that her trips to the Portland airport were in addition to her daily sales route. As a result, the court did not subtract airport travel days from Plaintiff's total days worked.

IT IS THE DECISION OF THIS COURT that, for the 2012 tax year, Plaintiff is allowed

a Schedule A deduction for unreimbursed employee expenses based on 26,635 business miles.

Dated this ____ day of September 2016.

ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was filed and entered on September 29, 2016.*